*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AARON DANIEL WIRTJES,

Defendant-Appellant.

UNPUBLISHED
March 30, 2023

No. 358621
Barry Circuit Court
LC No. 2021-000081-FC

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions and sentences of one count of first-degree criminal sexual conduct with a weapon, MCL 750.520b(1)(e); one count of kidnapping, MCL 750.349; one count of assault with a dangerous weapon, MCL 750.82; one count of domestic violence—third offense, MCL 750.81(2) and (4); and four counts of using of a firearm in the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 570 to 960 months' imprisonment for the first-degree criminal sexual conduct and kidnapping convictions; 120 to 180 months' imprisonment for the assault with a dangerous weapon conviction; 180 to 960 months' imprisonment for the domestic violence—third-offense conviction; and 24 months' imprisonment for each of the felony-firearm convictions. We affirm.

## I. FACTUAL BACKGROUND

This case stems from the kidnapping and sexual assault of CF on February 20, 2020. CF had recently broken up with defendant because defendant forced her to have sex with him on several occasions. After the breakup, defendant refused to leave CF alone, constantly texting her and showing up at her family events uninvited. Late in the evening on February 20, 2020, CF arrived home in her vehicle after work, exited her vehicle, and saw a man in a mask run at her from a shed on the property. CF immediately recognized defendant's boots and the way he ran. Defendant wore a black ski mask, a black, zip-up hoodie, black sweatpants, and gloves. CF recognized defendant's eyes behind the ski mask. CF further recognized defendant's voice, even though he used a voice modulator to disguise his voice, because defendant had Tourette's syndrome with recognizable vocal tics.

-1-

Defendant pointed a gun in CF's face and ordered her to get back in her vehicle. CF complied and defendant ordered her to drive to a remote location where he told her to stop, ordered her to get into the backseat, and then he raped her with a gun pressed to her head. Afterward, CF drove back to her apartment building where defendant exited the vehicle, pointed the gun back through the window at CF, told her to drive away, and threatened to kill her if she came back or told anyone.

At trial, the prosecution introduced CF's uncle, who testified that he worked with defendant and that before the incident defendant brought a voice modulator device to work to show off. The prosecution also introduced physical evidence at trial including a black sweatshirt found on the route that defendant made CF drive. The sweatshirt tested positive for both DNA and semen revealing an extraordinarily high likelihood that both CF and defendant contributed to DNA found on the sweatshirt, and that defendant contributed the semen found on it. The prosecution also introduced a cigarette butt from the scene of the crime bearing CF's DNA. Further, the prosecution introduced video surveillance from CF's apartment complex that showed a figure appear from behind the shed and approach CF's vehicle on the night of the incident.

Defendant's ex-wife testified at trial for the prosecution about instances in which defendant sexually assaulted her during their marriage, an instance in which defendant kidnapped their daughter, and an incident in which defendant threatened his ex-wife with a knife. She testified that defendant broke into her home in a trailer park and took their daughter from her bassinette in September 2015. After calling the police, she tried to contact defendant. Defendant told her that he left the child in a field for farmers to run over. He also stated that he had sent her off with strangers. Defendant told her to meet him in a playground. She went alone with her phone ready to dial 911. Defendant failed to bring their daughter to the playground. Defendant took his ex-wife's phone and tried to break it and then stood behind her and placed his arm around her neck and threatened that he had a knife. She talked him down, and defendant told her to go pack her belongings and meet him in 20 minutes. Defendant's ex-wife went home and told the police that defendant attacked her. The police located her daughter.

Kalamazoo County Sheriff's Department Detective Sergeant Ryan Johnson testified about the kidnapping incident as well. He provided further details of the police's success in locating defendant and the daughter. He explained that the police placed defendant in custody after the police found him and the child in an abandoned trailer in the trailer park. Defendant refused to put the baby down and police were forced to use a Taser. Officers found a pocketknife in his pocket during the arrest.

Defendant's ex-wife detailed another incident that occurred in 2015. She took her son to the hospital for treatment and returned home, but the next day she received a phone call telling her that she needed to bring her son back for further testing. She packed up her children and started to drive out of the trailer park. At the park exit, defendant came out from behind a sign and got in the car. He confessed that he made the call posing as hospital staff. He directed his ex-wife to start driving. He took her cell phone and placed it out of her reach and told her that he had a gun. She faked a medical episode and convinced defendant that she needed to stop driving and eat. Defendant let her drop him off, and defendant's ex-wife went back to her house to call the police.

A jury found defendant guilty on all charges. At sentencing, defense counsel argued that defendant should not be sentenced at the top of the sentencing guidelines minimum sentence range because the rape was less severe than stranger rape. The trial court interrupted defense counsel several times during this argument to question defense counsel. The trial court told defense counsel to tell the victim in this case that her rape was less severe than other rapes. After the interaction between the trial court and defense counsel, defendant allocuted on his own behalf. The trial court sentenced defendant as previously described. Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

First, defendant argues that defense counsel provided ineffective assistance by failing to file a motion to exclude the testimony of defendant's ex-wife and Detective Sergeant Johnson and by not objecting to it. We disagree.

To preserve the issue of whether counsel rendered ineffective assistance, the defendant must move for a new trial or evidentiary hearing in the trial court or move for remand on appeal. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant did not move for a new trial or an evidentiary hearing in the trial court. Appellate counsel, however, moved in this Court to remand for an evidentiary hearing[1] on this issue. This Court denied the motion for failure to persuade the Court of the necessity of remand at the time.[2] Defendant, therefore, preserved this issue for appellate review. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's findings of fact for clear error and review questions of law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). When there has been no evidentiary hearing held below, however, our review is limited to mistakes apparent on the record. *People v Riley (After Remand)*, 468 Mich 135, 139, 659 NW2d 611 (2003). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Both the United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. This state has adopted the federal constitutional standard for an ineffective assistance of counsel claim as set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Pickens*, 446 Mich 298 314; 521 NW2d 797 (1994). To obtain a new trial, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. A defendant must "overcome the strong

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Wirtjes*, unpublished order of the Court of Appeals, entered July 1, 2022 (Docket No. 358621).

-3-

presumption that counsel's performance was born from a sound strategy." *Id*. at 52 (citation omitted).

"The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id*. (quotation marks and citation omitted; alteration in original). We will not substitute our judgment for that of counsel or use the benefit of hindsight in assessing the trial counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Defense counsel is not ineffective by failing to make an objection that lacks merit. See *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Further, the "fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

MCL 768.27b in relevant part provides:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

(2) If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown.

(3) This section does not limit or preclude the admission or consideration of evidence under any other statute, including, but not limited to, under section 27a, rule of evidence, or case law.

MCL 768.27b permits the admission of defendant's other acts of domestic violence or sexual assault in cases involving domestic violence or sexual assault, so long as the testimony meets the standards of MRE 403. Our Supreme Court explained that trial courts must consider the applicability of other rules of evidence, not just MRE 403, when determining the admissibility of evidence under MCL 768.27b. *People v Propp*, 508 Mich 374, 386; 976 NW2d 1 (2021). A trial court abuses its discretion if it fails to consider other evidence rules applicable when determining whether to admit evidence under MCL 768.27b. *Id*.

Under MRE 403,

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considentations of undue delay, waste of time, or needless presentation of cumulative evidence.

Once admitted, unlike other-acts evidence under MRE 404(b) which prohibits presentation of evidence of a defendant's other crimes, wrongs, or acts to prove a defendant's propensity to commit a crime, under MCL 768.27b, the evidence may be used to argue that defendant had a propensity to commit acts of domestic violence or sexual assault. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010).

### A. DEFENDANT'S EX-WIFE'S OTHER-ACTS TESTIMONY

Defendant argues that defense counsel failed to provide effective assistance by not filing a motion to exclude the testimony of his ex-wife and by failing to object to the admission of such testimony. We disagree.

MCL 768.27b(1) governs the admissibility of defendant's ex-wife's testimony. Defendant stood accused at trial of committing both first-degree criminal sexual conduct with a weapon, MCL 750.520b(1)(e), and domestic violence—third offense, MCL 750.81(2) and (4). The charged offenses involved domestic violence because defendant had been in a dating relationship with CF and accused of causing her physical harm by raping her. See MCL 768.27b(6)(a)(*i*); MCL 768.27b(6)(b)(*iv*). Likewise, the incidents with defendant's ex-wife involved acts of domestic violence because she had been married to defendant and during separation from him he kidnapped their daughter and threatened his ex-wife with a knife. See MCL 768.27b(6)(a)(*iv*); MCL 768.27b(6)(b)(*iv*). She also testified that defendant sexually abused her repeatedly. See MCL 768.27b(6)(c).

In its first notice of evidence, the prosecution disclosed that it intended to call defendant's ex-wife to testify about past acts of domestic violence. The first notice specifically cited her personal protection order against defendant and defendant's 2015 conviction arising out of the incident in which defendant took his daughter and held a knife to his ex-wife's neck. Later, the prosecution provided a supplemental notice to defense counsel that it would also offer testimony from defendant's ex-wife detailing an instance in which defendant forced his way into her car, stated he had a gun, and forced her to drive. Defendant's ex-wife's testimony was admissible at trial in this case under MCL 768.27b.

Defendant does not argue that the ex-wife's testimony was inadmissible under MRE 403. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) Defendant waived this issue when he failed to articulate why her testimony may have been excluded under MRE 403.

Because defendant's ex-wife's testimony was admissible under MCL 768.27b, we also conclude that defense counsel did not provide ineffective assistance by not moving to exclude the testimony. Defense counsel did not respond to the supplemental notice, but she did attempt unsuccessfully to exclude the former spouse's testimony at a pretrial hearing. Because MCL 768.27b plainly permitted the admission of the other-acts evidence, defendant's argument lacks

merit. Defense counsel is not required to advocate for a meritless position. *Matuszak*, 263 Mich App at 58.

Defendant also argues that defense counsel provided ineffective assistance by failing to object to his ex-wife's testimony at trial when she injected gratuitous and nonresponsive comments in her answers. Defendant cites his former spouse's answers to defense counsel's cross-examination as examples of gratuitous and nonresponsive answers, such as her testimony that defendant stole her laptop and purse from her vehicle. Defendant claims that his ex-wife asked him to retrieve these items for her. When questioned, she testified:

> I don't remember a voicemail, but honestly I don't remember a whole lot for the first three months after all this 'cause I went through some pretty intense therapy after what your client put me through, ma'am.

Defendant argues at length in his brief that his ex-wife testified inconsistently at trial, but he does not explain how her testimony was gratuitous or prejudicial to defendant. Further, defendant cites no authority to explain why defense counsel was ineffective for her failure to object to his ex-wife's testimony at trial. Defendant's argument appears to be aimed more at attacking his former spouse's credibility as a witness. We generally defer to the credibility determinations of the fact-finders at trial. See MCR 2.613(C); *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).[3] Defendant has waived this argument upon appeal. See *Kelly*, 231 Mich App at 640-641.

### B. DETECTIVE SERGEANT JOHNSON'S OTHER-ACTS TESTIMONY

Defendant also argues that defense counsel provided ineffective assistance by failing to object to the admission of Detective Sergeant Johnson's testimony at trial, of which he claims the prosecution failed to provide notice in the supplemental notice. We disagree.

Detective Sergeant Johnson testified about his response to defendant's ex-wife's house after defendant kidnapped their daughter and how the police located defendant in the aftermath of the kidnapping. His testimony was admissible under MCL 768.27b as evidence of past domestic violence. Defendant points to no authority that states a specific witness must be identified in the notice. The record indicates that the prosecution gave a detailed notice of its intent to introduce evidence of the kidnapping in the prosecution's first notice, six months before the trial. Defense counsel unsuccessfully objected to the admission of evidence of the September 2015 kidnapping at the pretrial hearing. At trial, Detective Sergeant Johnson testified about his response to the initial police report and the success at locating defendant and his daughter. Defendant has not

---

[3] We additionally note, the physical evidence at trial also corroborated CF's recitation of the rape and kidnapping. The surveillance video showed a figure that came out from behind a shed, approach her vehicle, and then the vehicle drove away. Further, DNA evidence placed both defendant and CF at the scene. DNA pulled off of the cigarette placed CF at the scene of the rape. DNA pulled off of the black sweatshirt found on the route CF drove contained DNA of both CF and defendant. It also contained sperm connected to defendant.

argued how this testimony should have been excluded under MCL 768.27b or MRE 403. Because the trial court properly admitted the testimony, defense counsel was not required to advocate for a meritless position. *Matuszak*, 263 Mich App at 58. Defendant, therefore, has failed to establish a factual predicate for his ineffective assistance of counsel claim.

## C. DEFENSE COUNSEL'S PERFORMANCE AT SENTENCING

Defendant argues that defense counsel also provided ineffective assistance at his sentencing by failing to inform the trial court that defendant did not kidnap his daughter and that his conviction that arose out of that incident was already accounted for under the sentencing guidelines. We disagree.

The testimony at trial established that defendant entered his ex-wife's home without consent and kidnapped their daughter. He ultimately pleaded to assault with a dangerous weapon, MCL 750.82, related to that incident. Although defense counsel did not specifically argue that the sentencing guidelines already accounted for this conduct, the record reveals that the trial court understood that the guidelines accounted for the incident. The record further reflects that among the various arguments made by defense counsel, she argued that the September 2015 incident proved less harmful than it could have been. This Court will not attempt to second-guess defense counsel on matters of strategy and counsel is not ineffective merely because her strategy proved unsuccessful. See *Stewart (On Remand)*, 219 Mich App at 42.

## III. SENTENCING

## A. SENTENCE PROPORTIONALITY

Next, defendant argues that the trial court gave undue weight to other-acts evidence when it sentenced defendant within the recommended sentencing guidelines range. We disagree.

We review for clear error a trial court's factual determinations under the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

The sentencing guidelines are advisory. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). However, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *Id*. If the trial court imposed a minimum sentence within the range recommended under the advisory guidelines, that sentence is presumptively proportionate. MCL 769.34(10); *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011); see also *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "The principle of proportionality simply 'requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Lydic*, 335 Mich App 486, 501; 967 NW2d 847 (2021), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), and citing *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017). We must affirm a sentence that falls within the recommended sentencing

guidelines range absent an error in scoring or reliance on inaccurate information. *Schrauben*, 314 Mich App at 196 & n 1. If the trial court sentenced a defendant based on a scoring error that altered the appropriate guidelines range, the defendant is entitled to resentencing using appropriately scored guidelines. See *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006). If the scoring error does not affect the range, the defendant is not entitled to resentencing. *Id*. at 89 n 8.

Defendant does not assert any error in scoring or that the trial court based his sentences on inaccurate information. Defendant's sentence is within the recommended minimum guidelines range and is presumptively proportionate. See MCL 769.34(10); *Schrauben*, 314 Mich App at 196 & n 1. Therefore, we must affirm defendant's sentence. The record also reveals that the trial court properly considered the seriousness of the offenses for which the jury found defendant guilty beyond a reasonable doubt and appropriately considered defendant's lengthy criminal history of domestic violence and kidnapping and properly justified the sentences it imposed.

Defendant argues further that his case should be held in abeyance in light of our Supreme Court's order to schedule oral arguments in *People v Posey*, 508 Mich 940 (2021), because they ordered the parties to file supplemental briefs addressing among other things:

> [W]hether the requirement in MCL 769.34(10) that the Court of Appeals affirm any sentence within the guidelines range, absent a scoring error or reliance on inaccurate information, is consistent with the Sixth Amendment, the due-process right to appellate review, and *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015); and, if not, . . . whether the appellant's sentence is reasonable and proportionate. [*Id*.]

Under *Schrauben*, we must uphold a sentence imposed within a defendant's sentencing guidelines range because of its presumptive proportionality. We are required to follow the precedent of published Court of Appeals decisions. MCR 7.215(C)(2). Further, this Court previously denied defendant's motion for abeyance.[4] Therefore, we decline to hold defendant's case in abeyance.

## B. THE RIGHT TO ALLOCUTION

Defendant also argues that the trial court violated Michigan Code of Judicial Conduct, Canon 3(A)(12) by interrupting defense counsel while arguing for a lower sentence and depriving him of his right to allocution. We disagree.

Because defendant did not preserve this issue for appellate review, we review for plain error affecting substantial rights. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). Under the plain error test, defendant must establish that "(1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower

---

[4] *People v Wirtjes*, unpublished order of the Court of Appeals, entered May 19, 2022 (Docket No. 358621).

court proceedings." *Id*. (citation omitted). If the defendant satisfies the first three prongs, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alterations in original).

We review de novo interpretations of court rules and statutes. *People v Dixon-Bey*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354866); slip op at 2. We also review "de novo the scope and applicability of the common-law right to allocute . . . ." *People v Petty*, 469 Mich 108, 113; 665 NW2d 443 (2003).

Defendants have a right to allocution. At sentencing, the trial court must "give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." MCR 6.425(D)(1)(c). The Michigan Code of Judicial Conduct, Canon 3(A)(12) provides that a "judge should avoid interruptions of counsel in their arguments except to clarify their positions . . . ."

On appeal after remand in *Dixon-Bey*, this Court vacated the defendant's sentence and remanded for resentencing before a different judge because the trial court imposed an upward departure sentence based on acquitted conduct and the trial court violated the defendant's right to allocution at sentencing. *Dixon-Bey*, ___ Mich App at ___-___; slip op at 3-4. Although charged with first-degree murder, the jury found defendant guilty of second-degree murder. *Id*. at ___; slip op at 1. At sentencing, the trial court departed upward from the minimum sentencing guidelines range because it believed that the defendant committed first-degree murder. *Id*. at ___; slip op at 2. At resentencing, after both attorneys informed the trial court that it could not factor acquitted conduct into sentencing, the trial court directly questioned the defendant about taking responsibility for the murder. *Id*. at ___; slip op at 4. Defense counsel objected but the trial court continued until defense counsel posed a further objection. *Id*. The trial court discontinued questioning, but the defendant declined to speak further. *Id*. This Court held that the trial court's conduct violated defendant's right to allocution because the trial court abandoned its role as an impartial magistrate and likely intimidated the defendant causing her to cease her allocution. *Id*. at ___; slip op at 5. This Court concluded that the trial court only provided her with "an illusory and superficial opportunity for allocution." *Id*.

Defendant argues that his case differs little in practical effect from *Dixon-Bey*. The record in this case reflects that the trial court interrupted defense counsel during allocution after she argued that defendant's conduct differed in severity from other rape scenarios. The trial court recounted the trial evidence and asked defense counsel to explain her position that defendant's conduct differed palpably from other rapes. Although the trial court's interruptions initially sought clarification, the court's colloquy with defense counsel went beyond mere clarification. The record, however, indicates that the trial court did not influence defense counsel or prohibit her from making her argument that the trial court should consider defendant's conduct less severe than a stranger rape scenario as part of its sentencing decision and requested that the trial court impose a lower sentence than the court may have been considering.

In contrast to *Dixon-Bey*, the trial court did not depart from the sentencing guidelines and the trial court did not exchange heated words with defendant to intimidate him. Instead, after his counsel concluded her argument the trial court asked defendant if he desired to speak and permitted him to do so without interruption. Defendant expressed remorse for his conduct and explained that he desired an opportunity to not spend the rest of his life in prison. Defendant acknowledged that he had a criminal history and that he had struggled with alcohol addiction. He concluded by reiterating that he had remorse for his actions.

The record in this case indicates that the trial court did not offer defendant an illusory or superficial opportunity for allocution. The trial court gave defendant the opportunity to exercise his right to allocution. Because defendant exercised his right to allocution, we cannot conclude that the trial court committed plain error. Further, even if the trial court's interruption of defense counsel's allocution argument constituted plain error, based on the entire record before this court, we are not convinced that the error affected defendant's substantial rights.

## C. THE CONTENTS OF THE PRESENTENCE INVESTIGATION REPORT (PSIR)

Defendant also argues for the first time on appeal that the PSIR contained inaccurate information. MCL 769.34(10) states in relevant part:

> A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

Although defense counsel objected at sentencing to the contents of the PSIR because it contained duplicative information and some information that counsel considered irrelevant, defendant did not object to the accuracy of the information contained in the PSIR. Further, defendant did not raise the issue in a motion for resentencing in the trial court or in a proper motion to remand filed in this Court. Defendant argues that the issue of resentencing is preserved because he filed a timely motion to remand for resentencing. Defendant's contention, however, lacks merit. Appellate counsel's motion to remand on the issue of ineffective assistance of counsel was denied by this Court. Appellate counsel did not raise the issue of resentencing in that motion. Appellate counsel instead later filed an "amended" motion to also request a remand for resentencing. However, this Court rejected the amended motion because no provision in the Michigan Court Rules permits an amendment to a motion that has already been decided by this Court. The record does not show that defendant filed a new motion to remand for resentencing raising the issue for appeal. Defendant, therefore, failed to preserve the issue for appeal and is precluded from appellate review.

## D. RESENTENCING UNDER A NEW JUDGE

Defendant also argues that he is entitled to resentencing under a new judge. We disagree. Because defendant is not entitled to resentencing, he is also not entitled to resentencing before a new judge.

## IV. STANDARD 4 BRIEF

Defendant filed a pro se Standard 4 brief pursuant to Administrative Order 2004–6, Standard 4, raising several additional arguments.

### A. PROSECUTORIAL MISCONDUCT AND INEFFECTIVE ASSISTANCE

Defendant first argues that the prosecution engaged in misconduct in three ways by knowingly submitting false evidence, by vouching for the credibility of the key witness, and by making false statements during closing arguments. Defendant also argues that defense counsel provided ineffective assistance by failing to object to the prosecution's misconduct during trial. We disagree.

We generally review a claim of prosecutorial misconduct de novo to determine whether defendant was denied a fair trial. See *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Because this issue is unpreserved, appellate review is limited to plain error. See *Cain*, 498 Mich at 116. When a claim of prosecutorial misconduct is unpreserved, we will only review the alleged error if a curative instruction could not have remedied the prejudicial effect of the prosecutor's comments or if the failure to consider the issue would result in a miscarriage of justice. *People v Mayhew*, 236 Mich App 112, 122-123; 600 NW2d 370 (1999). A miscarriage of justice will not be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction. *Id*. at 123. Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. A prosecutor's remarks are "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). The defendant bears the burden of proving that he was denied a fair and impartial trial. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

A prosecutor has the right to introduce evidence that he or she legitimately believes will be accepted by the trial court. As such, a claim of prosecutorial misconduct cannot be predicated on a good-faith effort to admit evidence. See *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). However, the prosecution is not permitted to use false evidence to convict a defendant. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A defendant bears the burden of establishing that the evidence was in fact false. See *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016).

Defendant first argues that the prosecution engaged in misconduct when it introduced photographs of a gun and mask seized from defendant's house knowing that these items were not the gun or mask used during the rape. Before the photographs were admitted into evidence, the prosecution asked CF if she recognized the mask and gun. CF answered that she recognized neither item as those used in the incident. When these photographs were admitted into evidence,

the prosecution asked a detective sergeant if these items were seized from defendant's house. The detective sergeant confirmed that the items were seized from the house.

The prosecution's closing argument addressed the fact that CF did not identify the mask and gun as the items used during the rape:

> And keep in mind [CF's] not just IDing it to ID stuff, she's IDing it because she knows that's the sweatshirt he was wearing. There was a glove right by. She said that's not the glove he was wearing. Police recovered a gun from [defendant's] house. Says that's not the gun he had. Recovered a mask. She says that's not the mask he had. She's not just saying yes to whatever the troopers find, she says yes to the sweatshirt because he was wearing it, and she knows that's what he was wearing.

Defendant's argument does not establish that the prosecution knowingly introduced the mask and gun as the items used in the rape. Instead, the prosecution seemed to have introduced the gun and mask to establish CF's credibility by showing that CF did not identify these items as being used during the rape. A prosecutor's good-faith effort to admit evidence does not constitute prosecutorial misconduct. *Noble*, 238 Mich App at 660-661. Because the prosecution did not engage in prosecutorial misconduct when it submitted the photographs of the gun and mask for evidence, a curative instruction was not required. See *Seals*, 285 Mich App at 22.

Next, defendant argues that the prosecution impermissibly vouched for the credibility of CF during closing arguments. The prosecution may argue the evidence and all reasonable inferences arising from it as they relate to its theory of the case. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Id*. at 276. "A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

The prosecution did not vouch for CF's credibility claiming some special knowledge. Rather, the prosecution used the evidence in the record to make an argument that CF was a credible witness and victim. Defendant points to nothing in the record that the prosecution even suggested that it had special knowledge of CF's truthfulness. See *Bahoda*, 448 Mich at 276.

Defendant also argues that the prosecution engaged in misconduct when it falsely stated that defendant "decked" CF with a gun during the kidnapping. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich App at 66 (citations omitted). However, in closing arguments, prosecutors are generally given great latitude and are free to argue the evidence and all reasonable inferences from the evidence. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). Factually erroneous arguments do not warrant reversal when the remark "was isolated, brief, and did not affect the outcome of defendant's trial." *Unger*, 278 Mich App 239. At the end of this trial, the trial court instructed the jury that "[t]he lawyer's statements and arguments are not

evidence." See M Crim JI 3.5(3); 3.5(5). "[J]urors are presumed to follow their instructions." See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant briefly argues that the prosecution engaged in prosecutorial misconduct with the short statement that "he decked her with a gun." Defendant simply argues that this statement was not true and does not elaborate on why this statement is false. Regardless of its veracity, the statement was isolated and brief. See *Unger*, 278 Mich App at 239. Defendant has made no argument that this statement impacted the outcome of the trial. See *id*.

Because defendant's claim of prosecutorial misconduct is unpreserved, defendant must show that a curative instruction could not have remedied the prejudicial effect of the brief statement or that failure to consider the issue would result in a miscarriage of justice. See *Mayhew*, 236 Mich App 122-123. Defendant has failed in both respects. The effect of this isolated statement during closing argument would be sufficiently cured by an instruction by the trial court. See *Seals*, 285 Mich App 22. In fact, the jury instructions provided by the trial court after closing arguments informed the jury that arguments made by the attorneys did not constitute evidence. The prosecution's statement did not affect the substantial rights of defendant or affect the outcome of the trial.

Because we conclude that no prosecutorial misconduct occurred, defense counsel did not provide ineffective assistance of counsel. Defense counsel is not required to advocate for a meritless position. *Matuszak*, 263 Mich App at 58. Therefore, defense counsel was not ineffective for failing to object to alleged prosecutorial misconduct.

## B. JUDICIAL MISCONDUCT

Defendant also argues in his Standard 4 brief that the trial court engaged in judicial misconduct by allegedly stating to the jury that defendant is not innocent, prejudicing the jury against defendant. We disagree.

We review de novo whether judicial misconduct denied a defendant a fair trial which is a question of constitutional law. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Because defendant did not object to the trial court's statement at trial, we review for plain error affecting substantial rights. See *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020).

Our Supreme Court defined the standard for considering judicial misconduct as follows:

A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. [*People v* ]*Wilson*, 21 Mich App [36,] 37-38[, 174 NW2d 914 (1969)] ("If an examination of the record reveals that the veil of judicial impartiality was pierced by the trial judge, the case must be reversed."); *People v Bedsole*, 15 Mich App 459, 462; 166 NW2d 642 (1969) ("The veil of judicial impartiality should not have been pierced by the trial judge on this occasion."). A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by

-13-

creating the appearance of advocacy or partiality against a party.  [*Stevens*, 498 Mich at 170-171.]

In evaluating the totality of the circumstances, we must consider a variety of factors, including:

the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions.  [*Id*. at 172.]

Defendant argues that the trial court engaged in judicial misconduct during jury selection questioning:

*The Court*:  . . .  Any of the answers that would've been a yes, would've been something that would make you unable to be fair and impartial?

[*Juror*]:  No.

*The Court*:  You can listen to all this with an open mind?

[*Juror*]:  Yes.

*The Court*:  Defendant's—

[*Juror*]:  Yes.

*The Court*:  —completely not—innocent right now?

[*Juror*]:  Yes, sir.

Defendant points to the trial court's brief misstatement, but ignores that the trial court asked several potential jurors during voir dire if they believed that defendant was innocent at the start of trial.  Analysis of the record indicates that the trial court displayed no animosity toward defendant.  See *Stevens*, 498 Mich at 172.  Further, the trial court instructed the jury in its preliminary instructions and again in its final jury instructions that they must presume defendant innocent until proven guilty.  Defendant has failed to demonstrate that the jury ignored the trial court's instruction.

Defendant also argues that the trial court engaged in judicial misconduct when it refused an objection from defense counsel and later sustained a hearsay objection from the prosecution. We disagree.

Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." [*People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (citation omitted).]

In the first instance, the trial court rejected defendant's objection that the prosecution made an impermissible remark rather than ask the witness a question. Defendant, however, fails to explain how that exchange expressed open hostility toward defendant or defense counsel. Defendant also fails to establish the impropriety of the prosecution's question. Defendant's argument, therefore, lacks merit.

In the second instance, the trial court sustained the prosecution's objection to defendant's question, "[d]id you ever have any discussion with [CF's uncle] or exchange where he indicated what he thought about . . . ." Again, defendant fails to establish how this exchange prejudiced the jury against defendant or how the trial court displayed open hostility toward him or defense counsel. The record actually reflects that the trial court properly sustained an objection to hearsay. Defense counsel accepted the outcome of the objection without arguing a hearsay exception. Defendant has failed to demonstrate that the trial court ruled improperly. Defendant's argument that the trial court's conduct biased the jury lacks merit. Defendant has failed to show that the trial court engaged in judicial misconduct that improperly influenced the jury. See *Stevens*, 498 Mich at 170-171.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford